# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| **ELEANOR AND RALPH SCHIANO,** | : | |
| | : | **Civil Action No. 05-1771 (JLL)** |
| **Plaintiffs,** | : | |
| | : | |
| **v.** | : | |
| | : | |
| **MBNA, et al.,** | : | |
| | : | **REPORT AND RECOMMENDATION** |
| **Defendants.** | : | |

**HAMMER, United States Magistrate Judge**

## I.   INTRODUCTION

This matter comes before the Court on the motion of defendant Pressler & Pressler, LLP ("Pressler") to compel arbitration as to plaintiffs' claims against it (ECF No. 312). The motion was referred to the Undersigned by United States District Judge Jose L. Linares, U.S.D.J. The Court has considered the papers submitted in support of and in opposition to the motion. Pursuant to Federal Rule of Civil Procedure 78, the Court did not hear oral argument.

For the reasons set forth herein, the Undersigned respectfully recommends that the Court grant Pressler's motion to compel arbitration of plaintiffs' claims against it. The Undersigned further recommends that the Court order the parties to meet and confer to determine the availability of the American Arbitration Association ("AAA") to arbitrate this matter, and to file, within fourteen days from the disposition of this Report and Recommendation, a joint status report on the availability of AAA to arbitrate this matter. Additionally, the Undersigned will deny as moot defendant Gerald

Felt's motion to compel arbitration.[1]

## II.   BACKGROUND

### A.   Factual Background

In or around December 2002, plaintiff Ralph Schiano lost his job and became seriously ill. (Second Am. Compl. ¶ 15, Apr. 15, 2008, ECF No. 84.)  Around December 2002, MBNA, now Bank of America Corporation ("MBNA/BOA"),[2] agreed to settle Mr. Schiano's account ending in 9460 (the "9460 account").  (Second Amended Complaint ¶ 16.)  However, MBNA/BOA refused to settle the two accounts ending in 0820 and 7541 in plaintiff Eleanor Schiano's name, totaling approximately $25,000.  (*Id.* ¶¶ 17-19.)

Accounts 0820 and 7541 were referred to the National Arbitration Forum ("NAF") for arbitration in March 2003.  (*Id.* ¶ 17.)  Around July 2004, the NAF issued arbitration awards in favor of MBNA/BOA for the full amount of the debt on accounts ending in 0820 and 7541 ($25,000) and legal fees ($10,000), totaling approximately $35,000.  (*Id.* ¶ 19.)

In or around July 2004, Pressler, as attorneys for MBNA/BOA, commenced debt collection activity.  (*Id.* ¶ 20.)  According to the Second Amended Complaint, Pressler contacted plaintiffs

---

[1] Defendant Gerald Felt filed his own motion to compel arbitration, although it closely resembled Pressler's motion.  (ECF No. 313.)  On May 2, 2012, plaintiffs voluntarily dismissed defendant Gerald Felt from this action.  (*See* Order, ECF No. 330.)  Thus, the Court will deny as moot defendant Gerald Felt's motion.

[2] Plaintiffs assert that MBNA is "now Bank of America Corporation" and refers to the combined entities as "MBNA/BOA."  (Second Amended Complaint ¶ 16.)  Bank of America disputes this definition and contends that its answer advised plaintiffs that "MBNA America Bank, National Association changed its name to FIA Card Services, National Association as of June 10, 2006.  FIA Card Services, N.A. issues consumer credit cards, and would be the proper party to name in connection with Plaintiffs' allegations."  (Bank of America Opp'n at 9, Mar. 19, 2012, ECF No. 318.)  Solely for the sake of simplicity, the Court will refer to the MBNA entities as "MBNA/BOA."

directly and "threatened plaintiffs that if [the] arbitration awards, approximately $35,000, were not immediately paid, counsel fees and costs would continue to rapidly escalate and that a lien would be placed on plaintiffs' property." (<u>Id.</u> ¶ 20.) In September 2004, Pressler filed an action on behalf of MBNA/BOA in the Superior Court of New Jersey for plaintiffs' account ending in 7451. (<u>Id.</u> ¶ 21.) In or around October 2004, Pressler represented that MBNA/BOA would not accept anything less than full payment of plaintiffs' accounts ending in 7541 and 0820, and made a settlement offer of approximately $29,000 for those accounts. (<u>Id.</u> ¶ 22.) According to the Second Amended Complaint, Pressler represented that "plaintiffs would receive closing documents as to the satisfaction of the debts." (<u>Id.</u>)

According to the Second Amended Complaint, on October 8, 2004, plaintiffs refinanced with Argent Mortgage Company ("Argent") "to pay the MBNA/BOA NAF arbitration awards and MBNA/BOA debt in full," approximately $29,000. (<u>Id.</u> ¶ 24.) The Second Amended Complaint also alleges that plaintiffs represented to Argent that they were obtaining the mortgage for the sole purpose of paying their MBNA/BOA debt in full. (<u>Id.</u>) Plaintiffs also allege that the payment of approximately $29,000 to MBNA/BOA is reflected on the mortgage HUD Statement as paid to creditor MBNA/BOA through MBNA/BOA's attorney, Pressler. (<u>Id.</u>)

Plaintiffs claim that in January 2005, they discovered that their credit reports erroneously reflected that Eleanor Schiano's two MBNA/BOA accounts were "unpaid and delinquent." (<u>Id.</u> ¶ 26.) Plaintiffs also claim that the reports show that the MBNA/BOA account numbers were changed to account numbers ending in 1924 and 2141. (<u>Id.</u>) The Second Amended Complaint also contends that Mr. Schiano's credit report included both the original account numbers, 0820 and 7541, as well as the fictitious ones. (<u>Id.</u>) Plaintiffs disputed their credit reports with all credit

reporting agencies and contacted MBNA/BOA and Pressler.  (*Id.* ¶¶ 27, 28.)

According to the Second Amended Complaint, the conditions of the October 2004 subprime mortgage refinancing, payment of $29,000 to MBNA/BOA in more than full satisfaction of MBNA/BOA accounts, had not been met.  (*Id.* ¶ 29.)  In addition, the Second Amended Complaint states that "plaintiffs' payment of $29,000 to MBNA/BOA has not been acknowledged by MBNA/BOA, and was not forwarded to . . . MBNA/BOA."  (*Id.*)

**B.     Procedural Background**

Although the procedural history of this case is long, its review is necessary to provide context for Pressler's motion to compel arbitration.  Accordingly, the Court will examine the procedural history in some detail.

On April 4, 2005, plaintiffs filed a Complaint against MBNA, Wolpoff & Abramson, Gerald Felt, Esq., and the NAF.  They filed an Amended Complaint on May 16, 2005.  (ECF Nos. 1, 8.) Plaintiffs' Amended Complaint alleged violations of the Fair Debt Collection Practices Act, Federal Arbitration Act, Fourteenth Amendment, New Jersey Consumer Fraud Act, and Fair Credit Reporting Act, along with common-law fraud, defamation, and emotional distress.  (ECF No. 8.)

On May 26, 2005, MBNA, Wolpoff & Abramson, Pressler, and Gerald Felt, Esq. filed a motion to dismiss the Amended Complaint, or to compel arbitration.  (Mot. to Dismiss, May 26, 2005, ECF Nos. 10, 11.)  On September 2, 2005, NAF filed a motion to dismiss.  (Mot. to Dismiss, Sept. 2, 2005, ECF No. 19.)  The Court ordered the law firm defendants to file affidavits regarding payment of the $29,000 into the attorney trust account and disbursement to MBNA/BOA.  (Order, ECF No. 18.)  The affidavits were filed on September 9, 2005.  (ECF No. 21.)  In addition to filing oppositions to the motions to dismiss (ECF Nos. 15, 23), plaintiffs again moved to amend the

4

Complaint.  (First Mot. to Am., Sept. 13, 2005, ECF No. 22.)

On December 20, 2005, United States District Judge Jose L. Linares adopted Magistrate Judge Hedges's Amended Report and Recommendation and dismissed plaintiffs' Amended Complaint against defendant NAF.  (ECF No. 45.)  By separate Opinion and Order, Judge Linares affirmed Magistrate Judge Hedges's denial of plaintiffs' motion to amend.  (*See* Order and Op., Dec. 20, 2005, ECF No. 44.)  Judge Linares also denied the motion of defendants MBNA/BOA, Wolpoff & Abramson, Pressler, and Felt to dismiss, granted their motion to compel arbitration, and stayed the case pending arbitration.  (*Id.* at 13-14.)  In so doing, the Court ruled that the entire matter was subject to arbitration.  (*Id.* at 7.)

Plaintiffs petitioned the United States Court of Appeals for the Third Circuit for a writ of mandamus or, in the alternative, for permission to prosecute an interlocutory appeal of the Order compelling arbitration.  (*See* ECF No. 46.)  The Third Circuit denied plaintiffs' motions on February 6, 2006.  (ECF No. 49.)  The United States Supreme Court denied certiorari on November 6, 2006. (Pls.' Br. at 6, ECF No. 311-25; Op. at 3, ECF No. 54.)

On November 28, 2006, plaintiffs filed a motion to clarify the Court's December 20, 2005 Order.  (ECF No. 50.)  The Court found that plaintiffs "failed to cite to any applicable rule governing their request for clarification."  (Op. at 5, Dec. 27, 2006, ECF No. 54.)  "To the extent that Plaintiffs [sought] reconsideration of this Court's December 2005 Orders," the Court denied the request as untimely and noted that, even if it were to address the merits of any such request, reconsideration was not warranted.  (*Id.*)  In addition, the Court found that "[t]o the extent that Plaintiffs merely ask for clarification of th[e] Court's December 2005 Orders," the Orders are "sufficiently clear to convey the Court's intent."  *Id.* at 6.  The Court also noted that the December 2005 Order "neither confirmed

5

nor vacated the arbitration award, nor did this Court order a 'second do-over arbitration,' as alleged by Plaintiffs." (*Id.* at 6 n. 2.) The Court explained that it "determined that Plaintiffs' claims – which raise[d] post-arbitration issues relevant to the underlying arbitration – were subject to arbitration in light of the arbitration provision contained in the agreement governing the pertinent accounts that Plaintiffs had with MBNA." (*Id.*) Thus, the Court denied plaintiffs' motion for clarification. (*Id.* at 6.)

On June 5, 2007, plaintiffs filed a motion to confirm the June 2004 arbitration awards and for an order declaring certain arbitration fees unconscionable.[3] (ECF No. 57.) The Court denied plaintiffs' motion. (Op., Aug. 14, 2007, ECF No. 74.)

On August 28, 2007, the Court dismissed plaintiffs' case without prejudice, finding that all of plaintiffs' claims were subject to arbitration, but neither party had initiated arbitration. (Order, Aug. 28, 2007, ECF No. 77.)[4] The Court explained that, since "neither party seem[ed] inclined to proceed via arbitration," staying the case would serve no judicial purpose. (*Id.* ¶ 5.) Plaintiffs immediately filed a motion for reconsideration. (Mot. for Reconsideration, Aug. 30, 2007, ECF No. 78.)

In January 2008, the Court granted plaintiffs' motion for reconsideration and reopened the

---

[3] While plaintiffs' motion was pending, numerous letters were submitted by the parties. The Court noted that it "does not condone the filing of repetitive, argumentative and unsolicited letters," and ordered the parties to seek leave of Court before any additional briefing and/or correspondence related to the motion may be filed. (Letter Order, Aug. 1, 2007, ECF No. 73.)

[4] The Court also noted that "[t]o the contrary, Plaintiffs' counsel ha[d] filed a series of motions and appeals, both before this Court, as well as the Third Circuit Court of Appeals and the United States Supreme Court. In addition, the parties have filed dozens of unsolicited communications with this Court, often involving issues which [were], at best, tangential to Plaintiffs' claims." (Order ¶ 5, Aug. 29, 2007, ECF No. 77.)

case because plaintiffs' counsel represented that arbitration had, in fact, been commenced.  (Order ¶ 3, Jan. 24, 2008, ECF No. 81.)  The Court reminded the parties of its prior holding that all of plaintiffs' claims were subject to arbitration and that the Court would take no further action in the matter until arbitration was completed.  (*Id.* ¶ 5.)

On April 15, 2008, plaintiffs filed a Second Amended Complaint adding new parties and claims.[5]  (Second Amended Complaint, ECF No. 84)  The defendants filed motions to dismiss the Second Amended Complaint and plaintiffs filed a cross-motion to vacate the Court's December 2005 Order.  (ECF Nos. 90, 100, 103, 108, 110.)  On August 8, 2008, the case was referred to mediation and all proceedings were stayed for ninety days pending the outcome.  (Order, ECF No. 143.)  The Court subsequently denied, without prejudice, defendants' motions to dismiss and plaintiffs' cross-motion to vacate the Court's December 2005 Order, and permitted the parties to re-file the motions in the event that mediation was unsuccessful.  (Order, ECF No. 144.)

In October 2008, plaintiffs notified the Court that mediation was unsuccessful and NAF had "failed to arbitrate the matter," so they would be renewing their motion to vacate the Court's

---

[5] The amendment was the result of a new action that plaintiffs had filed in this Court while their motion for reconsideration was pending in this case.  (*See Schiano, et al. v. Bank of Am. Corp., et al.*, Civ. No. 07-4869; Compl., ECF No. 1; Am. Compl., ECF No. 3 ("new complaint").)  According to plaintiffs, the new complaint addressed new claims and, since the Court had dismissed the original case–Civil Action Number 05-1771–plaintiffs had to file the new complaint because the "statutes of limitations as to some of plaintiffs' new claims would have expired."  (Mueller Letter at 1, Civ. No. 07-4869, ECF No. 16.)  The Court determined that the claims raised in the new complaint were duplicative of those raised in Civil Action No. 05-1771 and terminated Civil Action No. 07-4869.  (Letter Op., Mar. 10, 2008, Civ. No. 07-4869, ECF No. 49.)  Plaintiffs filed a motion for reconsideration.  (Mot. For Reconsideration, Mar. 12, 2008, Civ. No. 07-4869, ECF No. 51.)  The Court denied plaintiffs' motion, but "in the interests of justice, and the Court's inherent authority to manage its docket," the Court allowed plaintiffs to amend their complaint in Civil Action No. 05-1771, "to include any claims raised in Civil Action No. 07-4869."  (Order, Mar. 31, 2008, Civ. No. 07-4869, ECF No. 57).

December 2005 Order.  (Mueller Letter at 3, Oct. 30, 2008, ECF No. 145.)  On November 19, 2008, plaintiffs filed a motion seeking *inter alia* an order vacating the Court's December 2005 Order compelling arbitration.  (Pls.' Mot., ECF No. 148.)

The Court entered a Scheduling Order in the case on December 11, 2008.  (ECF No. 158.) The Court set March 2, 2009 as the deadline for "[a]ny further Motions to amend the pleadings." (*Id.* at 2 ¶ 9.)  Plaintiffs filed a motion to amend the Second Amended Complaint on February 27, 2009.  (ECF No. 193.)

The Court met with the parties on April 7, 2009 to address approximately fifteen motions, or requests for relief, that had been filed between November 2008 and March 2009.  The Court administratively terminated plaintiffs' motion to set aside the Court's December 2005 Order (ECF No. 148) and plaintiffs' motion to amend the second amended complaint (ECF No. 193).  (Order, April 14, 2009, ECF No. 217.)  Plaintiffs appealed the Court's April 14, 2009 Order.  (Appeal of Magistrate Judge's Order, May 21, 2009, ECF No. 226.)  The Court denied plaintiffs' appeal and affirmed the Court's April 14, 2009 Order terminating the various motions.[6]  (Op., May 19, 2009,

---

[6] The Court's opinion notes that the motions and applications for relief "involved various discovery requests and, in many cases, the same relief was requested in multiple submissions." (Opinion at 3, ECF No. 232.)  The Court also notes that plaintiffs' motion to set aside "sought not only to Set Aside this Court's December 2005 Order compelling arbitration . . . but also sought to amend their Second Amended Complaint" which was also requested in ECF No. 193.  (Opinion at 3, ECF No. 232.)  In addition, plaintiffs' motion also sought to:

> assess sanctions against Defendants, to compel certain defendants to pay mediation fees, to compel certain defendants 'to immediately identify who owns plaintiffs' October 2004 motrgage' (a request repeated in almost every submission to this Court, to compel 'defendant Bank of America Corporation to immediately reflect payment in full by plaintiffs in October 2004 for accounts ending in 0820 and 7451 (also requested in CM/ECF No. 170),' an order for 'immediate sanctions and damages versus defendant Bank of America for deletion, without authorization and without
>
> (continued...)

ECF No. 232; Order, ECF No. 233;.)  The Court reminded the parties that "excessive, repetitive, inappropriate filings have been an ongoing issue in this matter," and ordered that until the Court issued an Order addressing various discovery issues, no other filings in the matter were permitted without prior permission.[7]  (*Id.* at 8, ECF No. 232.)

With the Court's permission, in July 2009, plaintiffs re-filed their motion to amend the Second Amended Complaint and their motion to vacate the Court's December 2005 Order.  (Order, ECF No. 252; Mot. to Vacate, July 29, 2009, ECF No. 259, (revised at ECF No. 261); Mot. to Am.,

---

[6](...continued)
correction, of fictitious account numbers ending in 2141 and 1924 in the year 2007,' a subpoena 'to the Securities & Exchange Commission (SEC) requesting that the SEC immediately identify the status of trust 'Park Place Securities,' and immediately provide information/documentation as to whether plaintiffs' October 2004 mortgage was ever placed in any trust Series of Park Place Securities Trust,' to compel 'defendants, Bank of America Corporation, Argent Mortgage Company, Citigroup, and Barclays/Homeq, to immediately produce all actual mortgage assignments documentation regarding plaintiffs' October 2004 mortgage' (a request made in most submissions to this Court), and a subpoena 'to the three credit reporting agencies, Experian, Equifax and Trans Union, requesting all plaintiffs' records regarding their three MBNA/BOA accounts, including fictitious and actual account numbers' (also requested in CM/ECF No. 170).

(Op. at 3-4, ECF No. 232.)

[7] On May 21, 2009, notwithstanding the Court's specific directive against further filings without prior permission, counsel for plaintiffs, without the Court's prior permission, filed a seven page letter.  (ECF No. 234.)  The Court *sua sponte* issued an Order to Show Cause why sanctions should not be assessed against plaintiffs' counsel for violating the Court's order.  (Order, May 22, 2009, ECF No. 236.)  In a hearing held on June 3, 2009, the Court found sanctions against plaintiffs' counsel to be appropriate.  But, "[i]n an exercise of restraint," the Court suspended the sanctions, "subject to reinstatement if [counsel] fails to comply with any future Court orders."  (Order at 2, June 3, 2009, ECF No. 248.)  The Court also reserved the right to impose additional sanctions for future violations.  (*Id.*)

July 30, 2009, ECF No. 262.)  The Court denied plaintiffs' motion to vacate without prejudice.[8]

(Order, Oct. 6, 2009, ECF No. 279.)

On October 16, 2009, the Court ordered the parties back to mediation.  (Order Appointing

Mediator, ECF No. 280.)  On January 8, 2010, the Court administratively terminated plaintiffs'

motion for leave to file a Third Amended Complaint.  (Order, ECF No. 283.)  The Court noted that

plaintiffs could reinstate the motion if mediation was not successful.[9]  (Id.)

By Consent Order filed on September 22, 2010, the Court vacated its December 2005 Order

compelling arbitration, and reinstated plaintiffs' claims for violations of the Fair Debt collection

Practices Act, Federal Arbitration Act, Fourteenth Amendment, New Jersey Consumer Fraud Act,

and Fair Credit Reporting Act, common-law fraud, defamation, and emotional distress.  (Consent

Order at 1-2, ECF No. 296).  Plaintiffs and MBNA/BOA jointly proposed the Consent Order to the

Court.  (Id. at 1.)  The Court noted that "the parties [had] consented to the form and entry of th[e]

order."  (Id.)  The Order included a signature page stating that "[t]he undersigned hereby consent to

the form and entry of the within Order," which was signed by counsel for plaintiffs and for defendant

---

[8] Plaintiffs' motion argued that (i) NAF had failed to arbitrate the matter for approximately two and a half years; (ii) NAF was no longer arbitrating consumer claims; (iii) NAF had a conflict of interest in the matter and (iv) Bank of America was no longer using arbitration.  (Order at 1-2, ECF No. 279.)  The Court rejected plaintiffs arguments, but allowed the plaintiffs to refile the motion either if NAF indicated that it was unwilling or unable to proceed with the arbitration; or "if, after 90 days, the arbitration before the NAF had not been set for hearing through no fault of Plaintiffs."  (Id. at 3.)

[9] After the parties were ordered to proceed to mediation, the Court amended the deadline by which plaintiffs were permitted to re-file any motion to vacate the Court's December 2005 Order.  (Order, Nov. 5, 2009, ECF No. 282.)  The plaintiffs were ordered to re-file their motion only "if the NAF indicate[d] that it [was] unwilling to unable to proceed with the arbitration or if the arbitration before the NAF ha[d] not been set for hearing through no fault of Plaintiffs within 60 days of completion of mediation."  (Id.)  A docket entry dated November 3, 2010 noted that mediation was unsuccessful.

10

for MBNA/BOA.[10]  (*Id.* at 2.)  Pressler avers that it was not a party to that proposal or the resulting Consent Order.

On February 10, 2011, the Court ordered the parties to return for an additional mediation session.  (Order, ECF No. 302.)  However, it is unclear whether that mediation session occurred.

On August 1, 2011, plaintiffs settled their disputes with Wolpoff & Abramson.  (Consent Judgment, ECF No. 306.)  On August 15, 2012, the matter was reassigned to the Undersigned and a telephone status conference was held with the parties on October 12, 2011.  An in-person status conference was held on February 22, 2012 and the Court issued an Amended Scheduling Order on February 24, 2012.  (Am. Scheduling Order, Feb. 24, 2012, ECF No. 310.)  The Amended Scheduling Order granted the parties leave to file the instant motions before the Court.  On March 6, 2012, plaintiffs moved to amend the Second Amended Complaint.[11]  (ECF Nos. 311, 314.) Defendants Argent, MBNA/BOA, and Barclays Bank, PLC d/b/a Homeq Servicing Corporation opposed plaintiffs' motion.  (*See* Oppositions, ECF Nos. 316, 318, 319; Replies, ECF Nos. 317, 320, 321.)  Defendants Pressler and Felt filed motions to compel arbitration.  (ECF Nos. 312, 313.) Plaintiffs opposed those motions.  (ECF No. 315.)

## III.  MOTION TO COMPEL ARBITRATION

With this procedural history in mind, the Court now turns to Pressler's motion to compel arbitration.  In sum, Pressler argues that the Court's December 20, 2005, Order remains in effect as to plaintiffs' claims against it, and therefore that plaintiffs' claims against it should proceed to

---

[10] Defendants Wolpoff and Abramson, Pressler, and Felt did not sign the consent order, nor were they mentioned in it.

[11] The Court has addressed plaintiffs' motion to file a Third Amended Complaint by separate Order filed on this date.

arbitration as the Court originally intended.  Pressler contends that it was not a party to the September 22, 2010, Consent Order, and therefore that Order did not extinguish its right to arbitration under the agreements.

Pressler contends that it was unaware of the Consent Order until January 30, 2011.  On January 26, 2011, after receiving a hearing request, NAF required a copy of the Court's Order to Arbitrate before it would proceed.  (McCabe Decl. ¶ 2 Ex. B, ECF No. 312-1; NAF Letter, Jan. 26, 2011, ECF No. 312-5.)   In response, plaintiffs notified NAF that "the parties have consented to withdraw arbitration of this matter and have consented to have the matter litigated in federal district court" and forwarded a copy of the September 22, 2010 Consent Order.  (McCabe Decl. Ex. B, Mueller Letter, Jan. 30, 2011, ECF No. 312-5.)   Pressler was sent a copy of the letter and the September 22, 2010 Consent Order.  (*Id.*)

Pressler claims that it did not see the Consent Order vacating the order granting defendants' motion to compel arbitration until this point.  (McCabe Decl. ¶ 5.)  In addition, Pressler contends that it never "agreed to any Order vacating [its] right to arbitration" and "never received a copy of the proposed Order or the application to the Court for same."  (*Id.* ¶ 6.)  Pressler notified NAF that it disagreed with plaintiffs' representation that the Consent Order applied to Pressler.  (McCabe Decl. Ex. F, McCabe Letter, ECF No. 312-9.)  Pressler also explained to NAF that "the New Jersey federal matter is ordered for a mediation session" followed by a telephone conference with the Court on Wednesday, May 18, 2011.  (*Id.*)  Pressler suggested that NAF should "await these developments" and told the NAF representative it would be participating in both events.  (*Id.*)  Pressler asserts that "[t]he National Arbitration Act [sic] has advised the parties that it will not proceed without an additional Order from the Court referring the matter to the Arbitration."  (McCabe Decl. ¶ 8, ECF

No. 312-1.)

### A.     Standard

The Federal Arbitration Act, 9 U.S.C. § 1, *et seq.* ("FAA") provides that a written arbitration

provision "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in

equity for the revocation of any contract."  9 U.S.C. § 2.  The FAA reflects a "liberal federal policy

favoring arbitration." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983)*.*

"The Supreme Court has unequivocally stated 'that questions of arbitrability must be addressed with

a healthy regard for the federal policy favoring arbitration.'" *Kahn v. Dell Inc.*, 669 F.3d 350, 354

(3d Cir. 2012) (quoting *Moses H. Cone Mem'l Hosp.*, 460 U.S. at 24).

In considering a motion to compel arbitration, a court must first determine "whether a valid

agreement to arbitrate exists" and, if so, "whether the particular dispute falls within the scope of that

agreement." *Trippe Mfg. Co. v. Niles Audio Corp.*, 401 F.3d 529, 532 (3d Cir. 2005).  "When

determining both the existence and scope of an arbitration agreement, there is a presumption in favor

of arbitrability." *Id.*  Motions to compel arbitration are reviewed under the same standard as motions

for summary judgment.  *Kaneff v. Del. Title. Loans, Inc.*, 587 F.3d 616, 620 (3d Cir. 2009) (citing

*Par-Knit Mills, Inc. v. Stockbridge Fabrics Co., Ltd.*, 636 F.2d 51, 54 (3d Cir. 1980)).  "The party

opposing arbitration is given the benefit of all reasonable doubts and inferences that may arise." *Id.*

(internal quotation marks omitted).

### B.     Discussion

Pressler argues that the Court's December 20, 2005, Opinion and Order finding that the

parties should proceed to arbitration remains in full force and effect as to plaintiffs' claims against

it.  (Br. at 3-4, ECF No. 312-2.)  Pressler also argues that the September 22, 2010, Consent Order

vacating the December 20, 2005 Order (ECF No. 296) "was not submitted to [Pressler] for consent

or comment, was not sent for their review as to form, and was not transmitted to the Court or notice

to their counsel." (Br. at 4, ECF No. 312-2; McCabe Decl. ¶¶ 5-6, ECF No. 312-1.) Additionally,

Pressler argues that the law of the case doctrine applies and, since the Court has already determined

that the matter should be arbitrated, that matter should not be reargued. (Br. at 3-4, ECF No. 312-2.)

    In December 2005, the Court determined that plaintiffs and defendants, including Pressler,

agreed to arbitrate any disputes and that plaintiffs' claims were subject to arbitration. (Op. and Order

at 11, ECF No. 44.) The Court noted that the following provision in the arbitration agreements

governed plaintiffs' MBNA accounts:

> Any claim or dispute ("Claim") by either you or us against the other, or against the
> employees, agents, or assigns of the other, arising from or relating in any way to this
> Agreement or any prior Agreement or your account (whether under a statute, in
> contract, tort, or otherwise and whether for money damages, penalties, or declaratory
> or equitable relief), including Claims regarding the applicability of this Arbitration
> and Litigation section or the validity of the entire Agreement or any prior Agreement,
> shall be resolved by binding arbitration.

(Opinion and Order at 10, Dec. 20, 2012, ECF No. 44 (citing Eastburn Aff. Ex. 1 at 9-10, Ex. 2 at

9-10, Ex. 3 at 9-10).)[12] The Court found that MBNA is "certainly contemplated by this provision,"

_____

[12] The Court notes that Pressler's current motion appears to attach the same affidavit of
Matthew Eastburn that it submitted with its first motion to compel arbitration (ECF No. 10). The
motion includes a "List of Exhibits" and states that Exhibit A includes an affidvit of Matthew
Eastburn "filed 5/26/05 (Doc 10) together with Exhibits 1, 2 and 3." (ECF No. 312-1 at 4.)
However, the Eastburn affidavit submitted with the current motion only includes Exhibits 1 and 2
and omits Exhibit 3. According to the affidavit, "Exhibit 3" is the Credit Card agreement for Ralph
Schiano's credit card ending in 9460. (Eastburn Aff. ¶ 6.) Pressler provides no explanation for this
omission and plaintiffs do not address it in their opposition. The omission appears to be a clerical
error, and the Court will treat the statement identifying Exhibit 3 as "undisputed." _See, e.g.,_ Fed. R.
Civ. P. 56(e)(2) ("If a party fails to properly support an assertion of fact or fails to properly address
another party's assertion of fact as required by Rule 56(c), the court may . . . consider the fact
undisputed for purposes of the motion."). Therefore, the Court may consider paragraph six of the
(continued...)

and defendants "Wolpoff & Abramson, LLP, Pressler and Pressler, and Gerald J. Felt, Esq. would

constitute either MBNA's agents or assigns."  (*Id.*)

Plaintiffs argue that the arbitration agreement requires MBNA/BOA to be a co-defendant in

any arbitration proceeding.  Plaintiffs rely on the following language in the arbitration agreement:

> For the purposes of this Arbitration and Litigation section, "we" and "us" means
> MBNA America Bank, N.A., its parent, subsidiaries, affiliates, licensees,
> predecessors, successors, assigns, any purchaser of your account, and all of their
> officers, directors, employees agents, and assigns or any and all of them.
> Additionally, "we" or "us" shall mean any third party providing benefits, services,
> or products in connection with the account (including but not limited to credit
> bureaus, merchants that accept any credit device issued under the account, rewards
> or enrollment services, credit insurance companies, debt collectors, and all of their
> officers, directors, employees and agents) if, and only if, such a third party is named
> by you as a codefendant in any Claim you assert against us.

(Eastburn Aff. Exs. 1, 2, 3, ECF Nos. 10-3, 312-4.)

Relying on that language, plaintiffs argue that because MBNA/BOA entered into a Consent

Order vacating the December 2005 Order to arbitrate, defendant Pressler would not be a

"codefendant" with MBNA/BOA in any arbitration proceeding.  (Opp'n at 5, ECF No. 315.)

According to plaintiffs, the arbitration agreements provide "no agreement to arbitrate, with any party,

if MBNA/BOA is not named as a codefendant in the arbitration proceeding." (Opp'n at 5, ECF No.

315.)

Pressler responds that MBNA/BOA is a co-defendant with Pressler in this federal district

court litigation, and the fact that MBNA/BOA waived its right to arbitration does not bar Pressler

from asserting its rights under the arbitration agreement.  (Br. at 5, ECF No. 312-2.)  In other words,

---

[12](...continued)
affidavit filed in the current motion, the same affidavit filed in Pressler's first motion to compel, as
supported by Exhibit 3 included in that motion.  As the December 20, 2005 Order indicates, Exhibits
1, 2 and 3 contain identical arbitration provisions.

Pressler disputes plaintiffs' interpretation of the arbitration agreement as requiring that MBNA/BOA be a co-defendant in the arbitration. Instead, Pressler argues, the arbitration agreement requires only that MBNA/BOA be named a co-defendant in the litigation.

To determine whether Pressler's motion to compel arbitration should be granted, the Court must decide three issues: (1) whether the Court's September 22, 2010 Order vacating its December 20, 2005 Order, which granted Pressler's first motion to compel arbitration, precludes Pressler from asserting any rights it may have to arbitration and binds Pressler to proceed in the action in district court; (2) whether Pressler can proceed to arbitration without MBNA/BOA, who was named as a co-defendant in the action, but elected not to enforce the arbitration agreement; and (3) whether Pressler waived any right it may have had to arbitrate. We address these issues in turn.

### 1.   Whether the Court's September 22, 2010 Applies to Pressler

Although the Court's September 22, 2010 Order vacated the December 20, 2005 Order as to defendants MBNA/BOA, it is silent as to Pressler. The Order notes that "Bank of America . . . elected not to enforce the arbitration clauses in the credit card agreements that governed the Plaintiffs' credit card accounts" and that "the parties [had] consented to the form and entry of this Order." (Order, Sept. 22, 2010, ECF No. 296.) Pressler did not sign the Consent Order, and is mentioned nowhere in it. Thus, nothing in the Order indicates any intention to bind Pressler to MBNA/BOA's election to forego arbitration.

### 2.   Whether Pressler May Proceed to Arbitration Without MBNA/BOA

Plaintiffs' argument that Pressler, as a third party, cannot enforce the arbitration agreement because "MBNA/BOA was not, and would not be, a codefendant in the arbitration proceedings" (Opp'n at 5) misreads the plain language of the arbitration agreement. Additionally, as discussed

below, the cases cited by plaintiffs are factually distinguishable from the instant matter.

The Supreme Court has held that "arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *Howsam v. Dean Witter Reynolds Inc.*, 537 U.S. 79, 83 (2002) (citation omitted). In determining "whether the parties agreed to arbitrate a certain matter (including arbitrability), courts generally . . . should apply ordinary state-law principles that govern the formation of contracts." *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995). The arbitration agreements at issue here contain a choice of law provision specifying that they are to be "governed by the laws of the State of Delaware." (Eastburn Aff. Exs. 1, 2, 3, ECF Nos. 10-3, 312-4.) Accordingly, the Court will look to the plain and ordinary meaning of the arbitration provision to determine whether the Consent Order entered into by plaintiffs and MBNA/BOA precludes Pressler from asserting its right to arbitrate. *See Citadel Holding Corp. v. Roven*, 603 A.2d 818, 822 (Del. 1992) (noting that "[i]t is an elementary canon of contract construction that the intent of the parties must be ascertained from the language of the contract"); *see also JFE Steel Corp. v. ICI Americas, Inc.*, 797 F. Supp. 2d 452, 469 (D. Del. 2011) (explaining that, under Delaware law, "[i]f the language of the contract is unambiguous, the Court interprets the contract based on the plain meaning of the language contained on the fact of the document").[13]

In this case, the agreement compels plaintiffs to arbitrate with "third parties" if they are named as a "codefendant" in any "claim" plaintiffs assert against [MBNA/BOA]. The parties do not

---

[13] The parties do not address which state's law should apply here. The Court notes that, under New Jersey law, the same basic principles of contract interpretation would apply. *See, e.g.*, *Nester v. O'Donnell*, 693 A.2d 1214, 1220 (N.J. Super. Ct. App. Div. 1997) ("To determine the meaning of the terms of an agreement by the objective manifestations of the parties' intent, the terms of the contract must be given their plain and ordinary meaning.") (citation and quotations omitted).

dispute that Pressler falls within one of the categories named in the agreement constituting a "third party."[14]  Plaintiffs contend that MBNA/BOA would not be a co-defendant in the arbitration with MBNA/BOA.  *See* ECF No. 296.[15]

The threshold question is whether the language in the contract is ambiguous.  "[A] contract is ambiguous only when the provisions in controversy are reasonably or fairly susceptible of different interpretations or may have two or more different meanings." *Lorillard Tobacco Co. v. Am. Legacy Found.*, 903 A.2d 728, 739 (Del. 2006).  Here, the language in the arbitration agreement is clear.  It requires that any claim against a third party debt collector, such as Pressler, shall be resolved by binding arbitration "if and only if" such third-party debt collector is named as a "codefendant"[16] in

_____

[14] Pressler does not specify in the instant motion to which category it belongs.  However, its first motion to compel arbitration, filed on May 26, 2005, explained that Pressler "[was] retained as counsel by co-defendant MBNA America Bank, N.A. in order to pursue collection of an outstanding debt on plaintiffs' credit account."  (Br. at 17, May 26, 2005, ECF No. 10-4.)  The prior brief also explained that Pressler constitutes a third party "service provider[] or debt collector[]" under the arbitration provision in plaintiffs' credit card agreement.  (*Id.*)

[15] Pressler argues that the law of the case doctrine applies and, because the Court has already determined that Pressler is entitled to proceed to arbitration, the question should not be reargued here.  The law of the case doctrine "posits that when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case." *In re Pharmacy Benefit Managers Antitrust Litig.*, 582 F.3d 432, 439 (3d Cir. 2009) (quoting *Arizona v. California*, 460 U.S. 605, 618 (1983)).  However, the Court's prior Opinion did not address the issue of whether MBNA/BOA's decision to abandon its right to arbitrate precludes Pressler from arbitrating under the terms of the arbitration agreement.  In addition, the Court's prior opinion did not address the provision of the arbitration agreement that the parties argue is relevant to this decision.  Thus, the Court is not reconsidering a matter that it has already decided and the law of the case doctrine does not apply.

[16] *See Black's Law Dictionary* (9th ed. 2009) (defining "codefendant" as "[o]ne of two or more defendants sued in the same litigation").

any "claim"[17] plaintiffs assert against MBNA/BOA.  Plaintiffs' complaint asserts claims against MBNA/BOA, as well as Pressler.  (*See* Second Amended Complaint, ECF No. 84.)  Thus, plaintiffs have named Pressler as a "codefendant" with MBNA/BOA.  The contract language is unambiguous in stating that plaintiffs' claims against a third party shall be resolved by binding arbitration if such third party is named as a co-defendant in any claim asserted against MBNA/BOA.  Nothing in the ordinary meaning of the words "claim" or "co-defendant" compels the conclusion that arbitration can proceed only if MBNA/BOA and the third-party debt collector are parties to the same arbitration, regardless of whether they are co-defendants in the same litigation.   From the inception of this lawsuit, Pressler has been a co-defendant with MBNA/BOA.  Accordingly, under the terms of the arbitration agreement, claims against third-party Pressler "shall be resolved by binding arbitration." *See Feil v. MBNA America Bank, N.A.*, 417 F. Supp. 2d 1214 (D. Kan. 2006) (interpreting identical arbitration clause and finding that, because plaintiffs joined third-party debt collector in their action against MBNA, plaintiffs' claims against third-party debt collector must be submitted to arbitration).

Plaintiffs' arguments misread the plain language of the arbitration agreement.  Nothing in the arbitration agreement limits a third party's right to arbitrate "if and only if" MBNA/BOA has chosen to exercise its right to arbitrate. Plaintiffs cite several cases in support of their arguments. However, these cases, which consider the identical arbitration provision at issue here, are factually distinguishable.  In each of these decisions, MBNA was not named as a co-defendant in the suit with the third-party defendant moving to compel arbitration.  *See Bontempo v. Wolpoff & Abramson,*

---

[17] "Claim" is broadly defined as: "1. The aggregate of operative facts giving rise to a right enforceable by a court . . . 2. The assertion of an existing right; any right to payment or to an equitable remedy . . . 3. A demand for money, property, or a legal remedy to which one asserts a right; esp., the part of a complaint in a civil action specifying what relief the plaintiffs ask for . . . ." *Black's Law Dictionary* (9th ed. 2009).

*L.L.P.*, No. Civ. A. 06-745, 2006 WL 3040905, at *6 (W.D. Pa. Oct. 24, 2006) (adopting Magistrate

Judge's Report and Recommendation denying debt collector's motion to compel arbitration "because

the plaintiffs' action [did] not name MBNA as a co-defendant"); *Karnette v. Wolpoff & Abramson,*

*L.L.P.*, 444 F. Supp. 2d 640, 646 (E.D. Va. 2006) (finding that there was no agreement to arbitrate

the FDCPA claim against debt collector "because the plaintiffs' action does not name MBNA as a

co-defendant"); *Cohen v. Wolpoff & Abramson, LLP*, No. 08-1084 (SRC), 2008 WL 4513569, at *4

(D.N.J. Oct. 2, 2008) (denying defendants' motion to compel arbitration because MBNA was not

named as codefendant and the arbitration provision "only requires arbitration when the credit card

company has been named as a co-defendant in a suit"). Therefore, the motions to compel arbitration

were denied.  Here, the plain language of the arbitration agreement limits a third-party debt

collector's right to arbitrate only where MBNA/BOA is not joined as a co-defendant.  Clearly,

plaintiffs named MBNA/BOA as a co-defendant in the suit. (*See* Second Amended Complaint, ECF

No. 84.)  Therefore, the cases cited by plaintiffs are inapposite.

### 3.    Whether Pressler Has Waived Its Right to Arbitrate

Plaintiffs also claim that Pressler has "waived any right to arbitrate." (Opp'n at 6, ECF No.

315.)  In support of this assertion, plaintiffs note that "plaintiffs filed their arbitration claims in April

2007 in the NAF.  The NAF . . . failed to arbitrate plaintiffs' claims," and "[i]t is now five (5) years

later." (*Id.*)

Pressler correctly argues that plaintiffs "have not made any legal or factual case for this

claim." (Reply at 5, ECF No. 322.)  According to Pressler, it did not delay at all in moving for

arbitration and Pressler has not engaged in any discovery. (*Id.* at 6; McCabe Decl. ¶¶ 2-4.)  In

addition, Pressler contends that plaintiffs can point to no action showing that Pressler has "acted

inconsistently with the right to arbitrate" or that plaintiffs have suffered any prejudice.  (Reply at 6-7) (quoting *Nino v. Jewelry Exch., Inc.*, 609 F.3d 191, 208 (3d Cir. 2010).

As an initial matter, the Court notes that plaintiffs have not included an affidavit or attorney certification attesting to any of the facts stated in their opposition brief.  *See* Fed. R. Civ. P. 56(c)(4) ("An affidavit or declaration used to support or oppose a motion must . . . set out facts that would be admissible in evidence.").  Plaintiffs cannot rely on such "unsupported assertions, conclusory allegations, or mere suspicions" to oppose Pressler's motion.  *See Byrne v. Monmouth Cnty. Dep't of Health Care Facilities*, 372 F. App'x 232, 234 (3d Cir. 2010).

Even if the Court were to consider plaintiffs' thin factual assertions, plaintiffs' waiver argument is untenable.  "Consistent with the strong preference for arbitration in federal courts, waiver is not to be lightly inferred, and waiver will normally be found only where the demand for arbitration came long after the suit commenced and when both parties had engaged in extensive discovery."  *Nino v. Jewelry Exch., Inc.*, 609 F.3d 191, 208 (3d Cir. 2010) (quoting *PaineWebber, Inc. v. Faragalli*, 61 F.3d 1063, 1068-69 (3d Cir. 1995)).  Courts will find that the right to arbitrate has been waived "where a sufficient showing of prejudice has been made by the party seeking to avoid arbitration."  *Id.* (quoting *Ehleiter v. Grapetree Shores, Inc.*, 482 F.3d 207, 223 (3d Cir. 2007)).

In *Hoxworth v. Blinder, Robinson & Co.*, the Third Circuit established a "nonexclusive list of factors relevant to the prejudice inquiry."  *Nino*, 609 F.3d at 208.  The factors include:

> [1] the timeliness or lack thereof of a motion to arbitrate . . . [; 2] the degree to which the party seeking to compel arbitration has contested the merits of its opponent's claims; [3] whether that party has informed its adversary of the intention to seek arbitration even if it has not yet filed a motion to stay the district court proceedings; [4] the extent of its non-merits motion practice; [5] its assent to the court's pretrial orders; and [6] the extent to which both parties have engaged in discovery.

21

*Id.* at 208-09 (citing *Hoxworth*, 980 F.2d at 926-27).  Although these factors generally inform the court whether a party opposing arbitration would suffer prejudice from their adversary waiting to invoke arbitration, "not all the factors need be present to justify a finding of waiver." *Nino*, 609 F.3d at 209.  Whether a party has "waived its right to arbitrate is necessarily case specific and thus depends on the circumstances and context of each case." *Gray Holdco, Inc. v. Cassady*, 654 F.3d 444, 451 (3d Cir. 2011) (citation omitted).

Plaintiffs' argument fails to discuss these standards, much less explain how they compel the Court to find that Pressler has waived.  Indeed, Pressler has signaled since nearly the inception of this litigation its intention to arbitrate plaintiffs' claims, and has not vacillated from that position. Pressler filed its first motion to compel arbitration in May 2005, less than two months after plaintiffs filed their original complaint.  (Mot. to Dismiss and/or Mot. to Compel, May 26, 2005, ECF No. 10; Compl., Apr. 4, 2005, ECF No. 1.)  The Court granted Pressler's motion to compel in December 2005.

The instant motion to compel is Pressler's second motion.  Several years passed after the Court's decision that plaintiffs' claims against Pressler required arbitration.  Plaintiffs cannot deny at least some responsibility for this delay.  Plaintiffs did not file their claim with NAF until 2007, and only after several failed attempts to have the arbitration Order reversed.  *See supra* Section II.B. Plaintiffs contend that, thereafter, NAF, "not due to any plaintiff [sic] action, failed to arbitrate plaintiffs' claims."  (Opp'n at 6, ECF No. 315.)  However, NAF's failure to arbitrate plaintiffs' claims cannot be attributed to any action, or inaction, by Pressler.

Even if the Court accepted the proposition that Pressler delayed in seeking arbitration, plaintiffs do not claim that they have been prejudiced by any such delay.  The Third Circuit has

emphasized that "prejudice is the touchstone for determining whether the right to arbitrate has been waived." *Hoxworth*, 980 F.2d at 925. Here, plaintiffs make no attempt to show prejudice from Pressler's alleged delay in making the instant arbitration demand. Citing no legal authority, plaintiffs contend that Pressler has waived its right to arbitrate due solely to the amount of time that has passed after plaintiffs filed the arbitration claim in 2007.

Pressler claims it did not learn about the Court's September 22, 2010 Order vacating the December 2005 arbitration until January 2011. (McCabe Decl. ¶ 5; ECF No. 312-1.) Pressler does not explain whether it never received the September 22, 2012 Order from the Court, or whether it did but construed the Order as removing from arbitration only plaintiffs' claims against MBNA/BOA. Although Pressler does not offer any explanation for this delay, a review of the docket indicates that the action had been in abeyance during this time period due to Court-ordered mediation. *See supra* II.B. And as noted above, plaintiffs have not claimed prejudice. Similarly, plaintiffs do not show or even argue that they expended any resources litigating issues in this matter with Pressler after Pressler was notified that the NAF refused to arbitrate plaintiffs' claims without another court order.[18] Thus, the Court cannot find that the timing of Pressler's instant motion to compel arbitration weighs in favor of finding waiver, when plaintiffs have demonstrated no prejudice for any such delay.

The remaining *Hoxworth* factors also do not support a finding of waiver. Pressler has not taken any action inconsistent with its right to arbitrate, and never acquiesced to plaintiffs' contention

---

[18] The *Hoxworth* factors "make clear [that] the concept of prejudice includes not only 'substantive prejudice to the legal position of the party claiming waiver,' but also extends to 'prejudice resulting from the unnecessary delay and expense incurred by the plaintiffs as a result of the defendants' belated invocation of their right to arbitrate.'" *Nino*, 609 F.3d at 209 (quoting *Ehleiter*, 482 F.3d at 224.

that the Court's September 22, 2010, Order removed its right to arbitration.  Pressler did not engage in motion practice on the merits of plaintiffs' claims before moving to compel arbitration or participate in the litigation process, other than to defend its right to arbitrate.

Most importantly, Pressler has not engaged in discovery with plaintiffs.[19]  (Reply at 6, ECF No. 322; McCabe Decl. ¶¶ 2-4; ECF No. 322-1.)  As one Court in this district has noted, "[t]he extent to which a party moving to compel arbitration has engaged in discovery has been a very significant factor in determining the issue of waiver."  *Opalinksi v. Robert Half Int'l, Inc.*, No. 10-2069 (FSH)(PS), 2011 WL 4729009 at *7 (D.N.J. Oct. 6, 2011) (citing *PaineWebber*, 61 F.3d at 1068-69 (noting that "waiver will normally be found only where the demand for arbitration came long after the suit commenced and when both parties had engaged extensive discovery")).  Here, as in *Opalinski*, the fact that discovery has not progressed at all is significant.  In *Opalinski*, the court found that "[d]ue to the significance of this factor in the case law and the fact that the parties here have not yet engaged in any discovery . . . this factor weighs heavily against a finding of waiver."  *Opalinksi,* 2011 WL 4729009, at *7.

Therefore, plaintiffs have made no showing of prejudice by any delay by Pressler in asserting its right to arbitrate, and the record supports a finding that plaintiffs and Pressler have not engaged in discovery.  Any delay by Pressler in bringing the instant motion may be attributed to the unusual procedural path this case has taken.  Moreover, nothing in the record supports a finding that Pressler delayed bringing this motion to gain an unfair tactical advantage over plaintiffs, or that Pressler led

---

[19] It bears noting that the parties signed a Consent Order, which the Court entered, stating that, if Pressler's instant motion to compel is denied, Pressler shall have "thirty (30) days after it files its Answer or other responsive pleading to answer Plaintiffs' discovery and serve discovery on the Plaintiffs."  (Consent Order, May 29, 2012, ECF No. 337.)

plaintiffs to believe that it would not continue to assert its right to arbitrate.  Accordingly, Pressler

has not waived its right to arbitration.  Accordingly, the Undersigned recommends that the Court

grant Pressler's motion to compel arbitration of plaintiffs' claims against it.

### 4.    Appointment of a Replacement Arbitration Forum

As a final matter, Pressler asks the Court to designate AAA as the arbitration forum instead

of NAF.  (Br. at 6, ECF No. 312-2.)  The arbitration agreements state that "the arbitration shall be

conducted by the National Arbitration Forum ("NAF") under the Code of Procedure in effect at the

time the Claim is filed."  (Eastburn Aff. Exs. 1, 2, 3, ECF Nos. 10-3, 312-4.)  The arbitration

agreements provide, however, for substitution if "NAF is unable or unwilling to act as arbitrator."

(Eastburn Aff. Exs. 1, 2, 3, ECF Nos. 10-3, 312-4.)

Pressler contends that NAF is no longer available to be the arbitrator.  Pressler initially

represented that NAF "has advised the parties that it will not proceed without an additional Order

from this Court referring the matter to arbitration, apparently due to the dispute between the parties."

(McCabe Decl. ¶ 8, ECF No. 312-1) (*see also* Br. at 2, ECF No. 312-2 ("The NAF declined to

proceed without another order referring the matter to it, and the arbitration stopped.").)  Pressler now

argues that NAF is "no longer 'available.'"  (Br. at 6, ECF No. 312-2.)  In support of the latter

contention, Pressler states that NAF "agreed to stop arbitrating 'consumer credit' matters" and points

to a copy of a settlement agreement, dated February 23, 2010, and a "Notice of Proposed Settlement

and Application for Attorney's Fees."  (*See* Br. at 1; McCabe Decl. Exs. C and D; ECF Nos. 312-6,

312-7.)

Pressler points to the Third Circuit decision in *Kahn v. Dell*, 669 F.3d 350 (3d Cir. 2012),

in support of its argument that the Court should appoint the AAA as arbitrators because NAF is no

longer available.  In *Kahn*, the Court addressed the issue of whether Section 5 of the FAA "requires the appointment of a substitute arbitrator when the arbitrator designated by the parties is unavailable." *Id.* at 351.  The Court noted that "[a]t the time the lawsuit was filed," July 2009, "the NAF had been barred from conducting consumer arbitrations by Consent Judgment, which resolved litigation brought by the Attorney General of Minnesota." *Id.* at 352.  The Court also explained that "[t]he Consent Judgment barred [the NAF] from the business of arbitrating credit card and other disputes and [ordered the NAF to] stop accepting any new consumer arbitrations or in any manner participate in the processing or administering of new consumer arbitrations." *Id.* at 352 (alteration in original) (citation omitted).

However, the Court has previously expressed its reservations about finding with certainty that NAF is unavailable.  For example, in denying plaintiff's motion for reconsideration, the Court observed that the Consent Judgment into which NAF entered barred NAF from entering into "any *new* consumer arbitration on or after July 24, 2009."  (Order filed October 6, 2009, ECF No. 279, at 2 ¶ 4 (citing Pl.'s Br., Ex. 5, Consent Judgment, at 2)) (emphasis in October 6, 2009, Order.)  The Court found that "the plain language of the Consent Judgment does not clearly preclude the NAF from proceeding with this matter."  (*Id.*)  Moreover, NAF told Pressler by letter dated January 26, 2011–*i.e.,* well after the Consent Judgment–that it would need a copy of this Court's Order to arbitrate before it would proceed, thereby suggesting that it might be willing to be the arbitrator. (McCabe Decl. Ex. B, ECF No. 312-5.)  Therefore, it remains quite unclear whether, at this juncture, plaintiffs' claims against Pressler would constitute a "new consumer arbitration" under the Consent Judgment thereby rendering NAF unavailable for purposes of this arbitration, considering that the arbitration was ordered to proceed in December 2005, plaintiffs claim to have submitted the matter

to NAF (despite their efforts to overturn the arbitration Order) but that NAF took no action, the entire action was terminated temporarily in August 2007, and the arbitration order was terminated as to the non-Pressler defendants in September 2010.

Apart from opposing Pressler's motion to compel arbitration, plaintiffs take no position on whether NAF is available or willing to arbitrate, or on Pressler's proposal to substitute AAA for NAF. However, plaintiffs have maintained that arbitration before NAF never commenced, and have consistently objected to NAF conducting the arbitration in this matter. (*See, e.g.,* Plaintiffs' Memorandum of Law in Support of Plaintiff's Motion To Vacate, ECF No. 260, at 7 ¶ 20, 10-12; *see also* McCabe Decl. ¶ 9, ECF No. 312-1.) Indeed, plaintiffs had named NAF as a defendant in this case, until the Court granted NAF's motion to dismiss. (Order filed December 20, 2005, ECF No. 45, at 2.) In prior submissions to this Court, plaintiffs also advocated the appointment of AAA as an alternate arbitrator, but expressed reservations about whether AAA was accepting consumer arbitrations. (Plaintiffs' Memorandum of Law in Support of Plaintiff's Motion To Vacate, ECF No. 260, at 13.)

Given plaintiffs' concerns regarding NAF, the lingering questions about NAF's availability to conduct this arbitration in light of the Consent Judgment and settlement agreement, and the parties' expressed preference for AAA, the Undersigned recommends that the Court order the parties to meet and confer to determine the availability of AAA to arbitrate this matter.[20] The Court further

---

[20] The arbitration clause in *Kahn* "did not designate a replacement forum in the event that NAF was unavailable for any reason." *Kahn*, 669 F.3d at 351. However, the arbitration agreements at issue here allow for the substitution if the substitute is "another nationally recognized, independent arbitration organization that uses as similar code of procedure." (Eastburn Aff., ECF No. 312-4, Ex. A-1.) Defendants have represented that AAA meets those qualifications. (McCabe Decl., ECF No. 312-1, ¶ 11.) Defendants also are willing to stipulate "to be bound to the contractual terms of the

(continued...)

recommends that the parties be required, within fourteen days from the disposition of this Report and Recommendation, to file a joint status report on whether AAA is available to arbitrate this matter.

### C.    Recommendation

For the reasons set forth above, the Undersigned recommends that the Court grant Pressler's motion to compel arbitration.  The Court determined in its December 2005 Order that the following claims are arbitrable as to defendant Pressler: (1) Violation of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692, *et seq*; (2) Violation of the Federal Arbitration Act; (3) Liability for Misrepresentations to the Superior Court of New Jersey;[21] (4) Violation of the New Jersey Consumer Fraud Act; (5) Defamation; (6) Intentional Infliction of Emotional Distress; and (7) Violations of plaintiffs' rights to equal protection and due process under the Fourteenth Amendment.  (Order at 12-13, Dec. 20, 2005, ECF No. 44.)  Plaintiffs amended the complaint after this Order was entered. (Second Amended Complaint, Apr. 15, 2008, ECF No. 84.)  The Second Amended Complaint asserts additional claims against Pressler for violations of the Fair Credit Reporting Act (Second Amended Complaint at 30, ECF No. 84) and for fraud.[22] (Second Amended Complaint at 24, ECF

---

[20](...continued)
arbitration agreements should there be any conflict between the AAA code of procedure and the arbitration agreements."  (*Id.*)

[21] The Second Amended Complaint seems to have replaced the Fourth Count of the original complaint, alleging liability for misrepresentations to the Superior Court of New Jersey, with a claim for "Fraud."  (Second Am. Compl. At 24, ECF No. 84.)

[22] The parties signed a Stipulation dismissing, without prejudice, Counts Nine through Fifteen of the Second Amended Complaint as to defendant Pressler.  The Court entered the Order on July 7, 2009.  (*See* Order, July 7, 2009, ECF No. 257.)

No. 84).  The Court finds that these claims are also arbitrable.[23]

The Undersigned also recommends that the Court order the parties to meet and confer to determine the availability of AAA to arbitrate this matter.  The Court further recommends that the parties be required, within fourteen days from the disposition of this Report and Recommendation, to file a joint status report on whether AAA is available.

The parties have fourteen days to file and serve objections to this Report and Recommendation pursuant to 28 U.S.C. § 636 and L. Civ. R. 71.1(c)(2).


*s/ Michael A. Hammer*
Hon. Michael A. Hammer
United States Magistrate Judge


Dated:  August 13, 2012

---

[23]  The FAA requires "any doubts concerning the scope of arbitrable issues" to be "resolved in favor of arbitration."  *Moses H. Cone Mem'l Hosp.*, 460 U.S. at 24-25.  The presumption of arbitrability is particularly strong where the arbitration agreement includes a broad provision encompassing all disputes arising from or relating to the agreement. *See Battaglia v. McKendry*, 233 F.3d 720, 725 (3d Cir. 2000) ("This presumption of arbitrability is particularly applicable where the arbitration clause at issue is broad.").

Here, the credit card agreement contains a broad arbitration clause providing that "[a]ny claim or dispute . . . arising from or relating in any way to this Agreement or any prior agreement or your account (whether under a statute, in contract, tort, or otherwise and whether for money damages, penalties, or declaratory or equitable relief) . . . shall be resolved by binding arbitration." (Eastburn Aff. Exs. 1, 2, 3, ECF Nos. 10-3, 312-4.)  Plaintiffs claims against Pressler under the Fair Credit Reporting Act and for fraud arise from Pressler's activity in relation to plaintiffs' credit card accounts.  Thus, guided by the presumption of arbitrability, the Undersigned recommends that all of plaintiffs claims against Pressler should be submitted to arbitration.