**NOT FOR PUBLICATION**

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| ELEANOR SCHIANO and RALPH SCHIANO, | Civil Action No.: 5-1771 (JLL) |
| Plaintiffs, | **OPINION** |
| v. | |
| MBNA, *et al.*, | |
| Defendants. | |

**LINARES**, District Judge.

This matter comes before the Court by way of motions for summary judgment filed on behalf of Defendants Citigroup, Inc. ("Citigroup") (ECF No. 538, "Citigroup Mov. Br.") and Argent Mortgage Company, LLC ("Argent") (ECF No. 540, "Argent Mov. Br."). The Moving Defendants seek the entry of summary judgment in their favor and dismissal of the claims against them as alleged in what is now Plaintiffs Eleanor and Ralph Schiano's Fourth Amended Complaint ("FAC"). (ECF No. 528). Plaintiffs have opposed these motions (ECF No. 542, "Pls.' Opp. to Citigroup"; ECF No. 543, "Pls.' Opp. to Argent") and both Citigroup and Argent have replied to same (ECF No. 544, "Citigroup Reply Br."; ECF No. 547, "Argent Reply Br."). The Court has considered the submissions filed in support of, and in opposition to, the Moving Defendants' motions and decides this matter without oral argument. *See* Fed. R. Civ. P. 78. For the reasons stated herein, the Court GRANTS the Moving Defendants' motions to dismiss and will dismiss Plaintiffs' claims as against Citigroup and Argent with prejudice.

## I.    BACKGROUND

At the outset, the Court notes that this matter is now in its eleventh year of litigation. For over a decade now, the Court has had the opportunity to reviewed Plaintiffs' filings and arguments, and has often found these filings to be incomprehensible and unnecessarily verbose. For example, in an opinion dated February 11, 2013 in which Magistrate Judge Michael A. Hammer denied in part and granted in part Plaintiffs' motion to amend, Judge Hammer explained the difficulty the Court had in "distinguish[ing] the pertinent facts—those that actually form the basis of Plaintiffs' causes of action—from the voluminous and superfluous background information." *Schiano v. MBNA* ("*Schiano I*"), 05-cv-1771, ECF No. 365, 2013 WL 2452681, *22 (D.N.J. Feb. 11, 2013). In affirming Judge Hammer's February 11, 2013 ruling, the undersigned explained that "[n]either the Court nor Defendants should have to piece together Plaintiffs' unintelligible allegations like a jigsaw puzzle to make sense of the proposed Third Amended Complaint, particularly in light of the fact that Plaintiffs are represented by experienced counsel." *Schiano v. MBNA*, 5-cv-1771, ECF No. 404 2013 WL 2455933, *4 (D.N.J. June 3, 2013).

Plaintiffs' filings in opposition to the pending motions for summary judgment suffer from the same deficiencies previously noted by the undersigned and other Judges handling this matter. For example, although Plaintiffs' claims in the FAC primarily arise out of an October 2004 mortgage transaction, Plaintiffs' brief in opposition to the pending motions begins with a detailed history of Plaintiffs' mortgage that dates back to 1987 and identifies no less than twenty different entities. (Pls.' Opp. to Citigroup at 2-8).

In fairness to the Plaintiffs, this Court has taken great pains to ascertain the relevance, if any, of this factual background as well as the relevance of the more than forty exhibits that Plaintiffs have attached to their opposition papers. However, it is the Plaintiffs, not Defendants nor this Court, who are responsible for putting forth a *prima facie* case in support of their claims to defeat

a motion for summary judgment.  To the extent that Plaintiffs cannot clearly connect the proposed evidence to their claims as against the Moving Defendants, a grant of summary judgment in the Moving Defendants' favor is warranted.

In his February 11, 2013 Opinion, Magistrate Judge Michael A. Hammer set forth in painstaking detail the factual and procedural history of this case.  *See Schiano I*, 2013 WL 2452681.  This Court has also set forth the facts of this case in additional opinions over the course of the eleven years that this matter has been pending.  Therefore, only the background which is necessary to provide proper context for the pending appeal is provided below.

### A.  The Parties

Plaintiffs Eleanor and Ralph Schiano are a married couple who reside in New Jersey.  (FAC ¶ 3).  According to Plaintiffs, Defendant Citigroup "is successor in interest to ACC Capital Holding Corporation parent corporation of Ameriquest Mortgage Company, and Argent Mortgage Company." (*Id.* ¶ 5).  Plaintiffs allege that "Defendant Argent Mortgage Company, LLC, is a corporation or other business entity organized pursuant to the laws of the State of California" that allegedly shares a business address with "Citi Residential Lending, a subsidiary of defendant Citigroup, Inc." (*Id.* ¶ 7).

### B.  The October 2004 Transaction

This action concerns complications with respect to a mortgage on Plaintiffs' home in Wayne, New Jersey, in which they have resided since 1987.  (FAC ¶ 27).  In 2004, Plaintiffs found themselves in default on two MBNA credit card accounts.  (*Id.* ¶ 64).  In order to pay off these debts, in October 2004, Plaintiffs sought to refinance their mortgage previously held by Fremont Investment & Loan ("Fremont loan").  (*Id.*).

3

To that end, at some time between the period of October 4, 2004 and October 8, 2004, Plaintiffs executed several loan documents and ultimately closed on a loan transaction. The Court refers to the October 2004 event as a "transaction" because Plaintiffs maintain that the transaction was not an actual refinancing as intended, but rather amounted to a modification of their existing mortgage loan. (ECF No. 542-42, Pls.' Opp. to Citigroup SMF ¶ 6). As best the Court can tell, Plaintiffs' argument that the October 2004 transaction was not an actual refinancing is premised upon their contention that the loan in effect prior to the October 2004 transaction—that is, the February 2004 Fremont loan—was not settled by the proceeds of the October 2004 transaction. (*Id.*).

Plaintiffs maintain that despite the fact that they never missed loan payments, they were "falsely placed in default," of their mortgage, which caused title of the property to pass to the lender. (Pls.' Opp. to Citigroup at 8). In an allegation that appears to be central to Plaintiffs' claims, Plaintiffs maintain that they were never apprised of the identity of the lender to their October 2004 transaction. Specifically, Plaintiffs state that "[t]he evidence, including inferences and Plaintiffs' undisputed facts, establish that Argent and Ameriquest sold [P]laintiffs' loan on October 4, 2004, prior to October 8, 2004 closing, Exh. 11. Deutsch Bank, custodian to Park Place Securities, Inc. (PPSI), documents show that the mortgage note was endorsed by Argent to Ameriquest, and by Ameriquest in blank on October 4, 2004, Exh. 11." (Pls.' Opp. to Citigroup at 19). Plaintiffs now argue that "Citigroup is legally responsible, by merger or asset sale or other conduct, for Plaintiffs' mortgage loan disaster," and that "Citigroup is successor lender" to the October 2004 transaction. (Pls.' Opp. to Citigroup at 18, 28).

Despite taking this position, Plaintiffs incongruously state that they "initially paid 'lender,' Ameriquest, for the October 8, 2004 loan." (*Id.* at 8). Thus, unless Plaintiffs' reference to "lender"

in quotation marks is made in jest, Plaintiffs state that on the one hand their lender was unknown at the time of the October 2004 transaction, and on the other hand that Ameriquest was their lender.

In any event, the parties appear to agree that (1) Argent was the original lender on Plaintiffs' October 2004 transaction documents,[1] and that (2) on or about October 8, 2004, Argent assigned Plaintiffs' loan to Ameriquest. (*See* Pls.' Exh. 27, at 4, 2004 IRS Form 1098, Mortgage Interest Statement; Argent Exh. 6). A Mortgage Loan Purchase Agreement dated November 24, 2004 indicates that Ameriquest sold and assigned Plaintiffs' mortgage to Park Place Securities, Inc. ("PPSI") (Argent Exh. 7); however, an April 17, 2009 "Assignment of Mortgage" shows Ameriquest, rather than PPSI, purporting to "convey, grant, bargain, sell assign, transfer and set over to Wells Fargo Bank, NA as trustee for [PPSI], asset backed pass through certificates series 2004-WHQ (Pls.' Exh. 13). Due to this alleged false default and ambiguity in title ownership, Plaintiffs state that they have been denied loan applications by both QuickenLoan and Wells Fargo. (Pls.' Opp. to Citigroup at 15-16).

Against this backdrop, Plaintiffs assert the following five counts against Citigroup and Argent, among other defendants: (1) "mortgage fraud/fraud/and fraudulent inducement and fraudulent conveyance"; (2) violation of the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. §§ 2605 and 2607; (3) violation of the Truth in Lending Act ("TILA"), 15 U.S.C. §§ 1601, 1602, *et seq.*, and; (4) breach of contract.[2]

---

[1] On October 4, 2004, Plaintiffs signed an Adjustable Rate Note which states "[t]he Lender is Argent Mortgage Company, LLC." The Note contains a provision indicating that Plaintiffs "understand that the Lender may transfer this Note." (Pls.' Exh. 11, Argent Exhs. 2-4).

[2] Plaintiffs have voluntarily dismissed their claims of violations of the Uniform Fraudulent Transfer Act, N.J.S.A. 25:2-1, *et seq.* as against the Moving Defendants. (*See* Pls.' Opp. to Citigroup at 38; Pls.' Opp. to Argent at 38). Accordingly, the Court will grant the Moving Defendants' motion for summary judgment as to Count II of Plaintiffs' FAC.

On May 20, 2016 and May 27, 2016, respectively, Defendants Citigroup and Argent filed the pending motions for summary judgment. Plaintiffs have opposed these motions, and the Moving Defendants have replied to same. These motions are now ripe for the Court's adjudication.

## II.   LEGAL STANDARD

Summary judgment is appropriate when, drawing all reasonable inferences in the non-movant's favor, there exists "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986). "[T]he moving party must show that the non-moving party has failed to establish one or more essential elements of its case on which the non-moving party has the burden of proof at trial." *McCabe v. Ernst & Young, LLP*, 494 F.3d 418, 424 (3d Cir. 2007) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986)).

The Court must "view the underlying facts and all reasonable inferences therefrom in the light most favorable to the opposing party." *Pa. Coal Ass'n v. Babbitt*, 63 F.3d 231, 236 (3d Cir. 1995). Moreover, "[i]n determining the appropriateness of summary judgment, the court should not consider the record solely in piecemeal fashion, giving credence to innocent explanations for individual strands of evidence, for a jury . . . would be entitled to view the evidence as a whole." *Abramson v. William Patterson College of New Jersey*, 260 F.3d 265, 285 (3d Cir. 2001) (quoting entirely *Howley v. Town of Stratford*, 217 F.3d 141, 151 (2d Cir. 2000)). If a reasonable juror could return a verdict for the non-moving party regarding material disputed factual issues, summary judgment is not appropriate. *See Anderson*, 477 U.S. at 242-43, 249 ("At the summary judgment stage, the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial.").

## III.   DISCUSSION

## A. Count I

With respect to Count I for "mortgage fraud/fraud/and fraudulent inducement and fraudulent conveyance," Plaintiffs allege:

> that all defendants defrauded [P]laintiffs with fraudulent scheme including fraudulent inducement into October 2004 subprime mortgage, fraudulent obtainment and fraudulent conversion of [P]laintiffs' 2004 October subprime mortgage, and fraudulent scheme to defraud [P]laintiffs and keep them in fraudulent subprime mortgage, and fraudulently combine to accomplish the unlawful purpose by unlawful means of the fraudulent taking of [P]laintiffs' mortgage monies, fraudulently obtain and fraudulently convert [P]laintifffs' subprime mortgage in which all defendants have a financial interest.

(FAC ¶ 116).   Plaintiffs further allege that "[D]efendants conspired and colluded with intent to defraud by inducing [P]laintiffs into subprime mortgage by inflating the real estate appraisal of [P]laintiffs' property to secure fraudulent mortgage to pay MBNA/BOA arbitration awards/debt." (*Id.* ¶ 117).   According to Plaintiffs, these "actions were fraudulent and with malice, purposeful and intentional, and without reasonable [sic] by law." (*Id.* ¶ 118).

To state a claim for fraud under New Jersey law, a plaintiff must establish: "(1) a material misrepresentation of a presently existing or past fact; (2) knowledge or belief by the defendant of its falsity; (3) an intention that the other person rely on it; (4) reasonable reliance thereon by the other person; and (5) resulting damages. *Gennari v. Weichert Co. Realtors*, 148 N.J. 582, 610 (1997).

The Moving Defendants argue that Plaintiffs cannot prove their fraud claims because they have failed to identify any misrepresentation made to them by or on behalf of either Citigroup or Argent. (Citigroup Mov. Br. at 10-13; Argent Mov. Br. at 5-8).   In support of this position, the Moving Defendants cite to the following sworn deposition testimony of Ralph Schiano:

7

Q.    Did Argent Mortgage Company at any time ever make a statement to you which you now believe is false?

A.    No.

. . .

Q.    Did Citigroup, Inc. ever tell you anything which you now believe was false?

A.    No.

(Citigroup Mov. Br., Exh. 5, Dep. Tr. of Ralph Schiano, 153:5-154:1).

Q.    Did anyone make any statements to you prior to the loan closing or on the date of the loan closing which you now believe are false?

A.    No, not that I can . . .

(*Id.* at 145: 19-22).

As Defendants note, Eleanor Schiano testified similarly:

Q.    Did you have any communication with Citigroup, Inc., or any of its affiliates or subsidiaries prior to the origination of the October 2004, Argent loan?

A.    No.

Q.    Did you have any communications with Argent Mortgage Company prior to the origination of the October, 2004 mortgage loan?

A.    No.

8

(Citigroup's Mov. Br., Exh. 1, Dep. Tr. of Eleanor Schiano 48:8-16).

In opposition, Plaintiffs argue that they "relied to their detriment, and incurred damages, based on defendants' (both Argent and Citigroup) misrepresentations that the October 8, 2004 transaction was a valid mortgage refinance. It was not." According to Plaintiffs, "[t]itle had been destroyed by a false default that both Argent and Citigroup were aware. Defendants knew of falsity of the representation, and intended plaintiffs to rely on falsity." (*Id.*).

Plaintiffs further argue that:

The misrepresentation is also contained in the false presentation of a mortgage contract by Argent/Citigroup to plaintiffs, when in fact the October 8, 2004 transaction was merely a modification of prior debt from the year 2002 due to the false default. Defendants Citigroup and Argent have previously stated that Argent obtained a "partial security," Exh. 7. Whether the prior false default debt from 2002 has to be paid prior to Argent and Citigroup claiming their "partial security" is of no consequence to a fraud action. The fact remains that [P]laintiffs were deceived, with document misrepresentation, into believing that they were signing a valid refinance contract with prior payoff of loans by them.

(Pls.' Argent Opp. Br. at 30).

Plaintiffs, in support of their position that the October 2004 transaction is "merely a modification of the prior loans," have attached a "Letter of Transmittal" from Argent to JPMorgan Chase that identifies Ralph Schiano as the borrower. (Pls.' Opp. to Argent at 7; ECF No. 543-6). This letter contains a "checklist that lists the materials for transmittal in brief fashion," and has an "x" marked next to a line item listed as "Modification Agreement (if applicable)." Notwithstanding this document, it remains unclear to this Court what (if any) significance the labeling of the October 2004 transaction—call it a "loan" or a "modification"—has on Plaintiffs' fraud claims. In other words, regardless of the name of the October 2004 transaction, Plaintiff has as yet failed to identify any misrepresentation that was knowingly made by either of the Moving

Defendants. (*See* Hammer Op. at 5, explaining that Plaintiff has failed to "explain what effect [the 'modifications'] has on their mortgages").

Accordingly, the Court will grant the Moving Defendants' motion for summary judgment with respect to Count I of the FAC.

### B.  Count III

In Count III of their Complaint, Plaintiffs allege that the Moving Defendants have violated the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. §§ 2605 and 2607. This statute prohibits, *inter alia*, the "accept[ance of] any fee, kickback, or thing of value pursuant to any agreement or understanding . . . that business incident to or a part of a real estate settlement service involving a federally related mortgage loan shall be referred to any person." 12 U.S.C. § 2607(a).

Plaintiffs summarily plead that "[i]n violation of 12 U.S.C. § 2607 . . . all other defendants [which appears to include the Moving Defendants] paid fees and kickbacks to each other, regarding the [P]laintiffs' subprime mortgage which is a federally related mortgage and falls under 12 U.S.C. § 2607, and in the form of unaccounted for payment in full of MBNA/BOA debt through subprime mortgage, which now equates to kickbacks and/or unearned fees to defendants and violation of RESPA federal statute." (FAC ¶ 126).

As Citigroup and Argent have explained, "Plaintiffs' RESPA claim against [the Moving Defendants] is based on the contention that the disbursements of loan proceeds in October, 2004 to Defendant MBNA are unaccounted for and therefore constitute unearned fees and/or kickbacks received by [the Moving Defendants] in connection with Plaintiffs' mortgage loan." (Citigroup Mov. Br. at 14; Argent Mov. Br. at 9). In Plaintiffs' words, "Argent/Citigroup is responsible under

TILA/RESPA and other Counts set forth in Plaintiffs' [FAC]" because even though "the checks from MBNA/BOA were cashed[, Mr. Schiano's] credit report then showed that MBNA/BOA accounts were still delinquent (despite payment in full)."

Yet Plaintiff has produced no evidence that Argent or Citigroup withheld any fees that were intended to be submitted to MBNA.  Rather, both Plaintiffs explicitly testified at deposition that they had no proof that Argent retained any fees, and Mr. Schiano testified that he was not aware of any fees or kickbacks that Citigroup received or paid in connection with the October 2004 transaction.  (ES Dep. Tr. 112:1-14; RS Dep. Tr. 150:12-19, 156:2-6).  In fact, an attorney with Pressler and Pressler, the firm that was retained by MBNA Bank through its attorneys at Wolpoff and Abramson, L.L.P. ("W&A") to collect Plaintiffs' outstanding debt, has certified that Pressler and Pressler "deposited the [settlement] funds in the Automated Clearing House Network account arranged by [W&A] for receiving sums due MBNA Bank." (Argent Mov. Br., Exh. 8).  The Court has reviewed copies of the two checks, written out to Pressler and Pressler for the exact amounts indicated in MBNA's September 22, 2004 settlement letters.  (Argent Mov. Br., Exhs. 6;7).  Moreover, a March 24, 2005 letter from an attorney at W&A addressed to Plaintiffs' attorney in this action states: "Please be advised that the above referenced matters have been resolved for a total settlement amount of $28,593.68.  The settlement payment was received and credited against your client's accounts on October 29, 2004 and the accounts closed accordingly." (Argent Mov. Br., Exh. 9).

In fact, Plaintiffs have conceded that "Argent's agent, Anthem Title, directly paid Pressler and Pressler, on behalf of MBNA, said sums at the October 8, 2004 transaction . . . ." (Pls.' Opp. to Citigroup SMF ¶ 10).  Despite this concession, Plaintiffs incongruously appear to argue that Argent and Citigroup withheld the MBNA funds.  Plaintiffs maintain that the W&A letter indicates

11

that the funds were applied to account numbers that do not, in fact, match the numbers of Plaintiffs'

two MBNA credit card accounts.  (Pls.' Opp. to Argent at 35).  In Magistrate Judge Hammer's

February 2013 Opinion, he explained that the change in numbers "accords with Bank of America's

representation that it is a standard accounting practice to create new account numbers after debt is

charged off." *Schiano I*, 2013 WL 2452681, *4.  In any event, even assuming that the W&A letter

indicates that the funds were applied to the wrong account, Plaintiffs have not presented any

evidence that Argent or Citigroup harbored these funds.  Rather, Plaintiffs summarily state that

"Argent assessed [P]laintiffs' payoff liabilities, and as a result, [P]laintiffs overpaid MBNA debt

by $494.00, and Argent wrongly reported cash-out of $7,768.07."  (Pls.' Opp. to Citigroup at 34-

35).  Plaintiffs also state that "Payment to MBNA was not reported as it should have been, Exh.

10, 25, and MBNA/BOA failed to recognize any payment.  The payment is not reflected as cash

out to [P]laintiffs, and is reflected as 'additional settlement charges,' Exh. 25."  (*Id.*).

In support of the above statements, Plaintiffs refer the Court to three exhibits, labeled

Exhibits 10, 24, and 25.  Respectively, these exhibits consist of: (1) a "Loan Approval Summary"

prepared by Argent, dated October 4, 2004; (2) a "Uniform Residential Loan Application, to which

is attached an undated "Loan Approval Summary" from Argent that has different terms than that

included in the first document, and; (3) a document that Plaintiffs have titled "Argent HUD & cash

out" but for which the heading of the document itself is cut-off.  (Pls.' Exhs. 10, 24, 25).  Having

carefully reviewed these documents, the Court makes several findings.

First, the Court notes that the "Loan Approval Summary" prepared by Argent does identify

"cash out" in the amount of $7,768.07, as Plaintiffs indicate.  (Pls.' Opp. to Argent, Exh. 10).

However, the Loan Approval Summary included in Exhibit 24 contains different terms, identifying

"cash out" in an amount of $5,282.87."  Plaintiff has not explained the discrepancy between these

two documents, nor has Plaintiff explained why Argent's identification of "cash out" in the amount of $7,768.07 somehow amounts to evidence that Argent or Citigroup accepted fees or kickbacks in violation of RESPA.  Second, and in response to Plaintiffs' remaining arguments in opposition to dismissal of their RESPA claims, Plaintiffs have failed to identify for the Court the legal significance to Plaintiffs' claims, if any, of the fact that payment to MBNA was allegedly not properly documented in the loan documents.

In short, having carefully reviewed the documents filed by Plaintiffs in support of their RESPA claims, the Court finds that Plaintiffs have not offered any evidence indicating that either Argent or Citigroup received kickbacks or fees in conjunction with the October 2004 transaction. To the extent the three documents relied upon by Plaintiffs can be said to somehow evidence unlawful conduct, Plaintiffs have failed to connect the dots between that evidence and their RESPA claims.  Accordingly, the Court will grant the Moving Defendants' motion for summary judgment with respect to Count III of Plaintiffs' FAC.[3]

## C.  Count IV

Plaintiffs allege that Argent and Citigroup have violated the Truth in Lending Act ("TILA"), 15 U.S.C. § 1601, 2016 *et. seq.* as well as "Regulation Z" thereto (12 C.F.R. 226), known as the Home Ownership and Equity Protection Act ("HOEPA"), 15 U.S.C. § 1602(aa). The Truth in Lending Act ("TILA") requires a creditor to make certain disclosures "in connection with a 'consumer credit transaction.'" *Pollice v. National Tax Funding, L.P.*, 225 F.3d 379, 409 (3d Cir. 2000) (quoting 15 U.S.C. § 1638).  Congress intended the Act

---

[3] Defendants also argue that Plaintiffs' RESPA claim is time-barred.  (Argent Mov. Br. at 12; Citigroup Mov. Br. at 14-18).  Because the Court finds that Plaintiffs have failed to make a sufficient showing that they can sustain their *prima facie* case of a RESPA violation, the Court need not address this issue.

> to assure a meaningful disclosure of the terms of leases of personal property for personal, family, or household purposes so as to enable the lessee to compare more readily the various lease terms available to him, limit balloon payments in consumer leasing, enable comparison of lease terms with credit terms where appropriate, and to assure meaningful and accurate disclosures of lease terms in advertisements.

15 U.S.C. § 1601.

The entirety of Plaintiffs' substantive allegations of TILA and HOEPA violations are as follows:

> As the result of the earned and unearned fees/kickbacks in the [P]laintiffs' October 2004 subprime mortgage, the fees exceeded eight (8) percent of the loan amount resulting in a HOEPA loan, which was not disclosed to the [P]laintiffs by [D]efendants. Further, HOEPA prohibits a lender from engaging in a pattern or practice of extending HOEPA loans without regard to the borrowers' ability to repay from sources other than the encumbered home's equity. Further, [D]efendants violated Truth in Lending Act by failing to acknowledge payment in full of [P]laintiffs' MBNA/BOA debt.

(FAC ¶ 130).

As recompense for this alleged conduct, Plaintiffs are seeking, *inter alia*, "rescission of mortgage contract/note, and expungement of mortgage lien and expungement of mortgage lien converted to fraudulent debt." (*Id.* at 32). The Moving Defendants request summary judgment with respect to Plaintiffs' TILA and HOEPA claims, arguing that these claims are at once time-barred and lacking in factual support. (Argent Mov. Br. at 12-17; Citigroup Mov. Br. at 18-22).[4]

---

[4] Additionally, Citigroup argues that it is entitled to summary judgment with respect to Plaintiffs' claims because the entirety of those claims are premised upon the wrongful assumption that "Citigroup is a successor in interest to Argent Mortgage Company and is therefore liable under the successor theory of liability for Argent Mortgage Company's alleged acts." (Citigroup Mov. Br. at 7). However, because the Court finds that Plaintiffs cannot state a claim under TILA or HOEPA, the Court need not consider whether Citigroup may be liable as a successor to Argent.

14

At the outset, the Court notes that Judge Hammer has already determined that "rescission is not a remedy that is available to Plaintiffs." *Schiano I*, 2013 WL 2452681, *22 (D.N.J. Feb. 11, 2013). Specifically, Judge Hammer stated:

> "Under Regulation Z, 12 C.F.R. § 226.1 et seq., the right to rescind does not apply to a residential mortgage transaction." *Scott v. Wells Fargo Home Mortg., Inc.,* 326 F.Supp.2d 709, 716 (E.D.Va.2003); 15 U.S.C. § 1635(e)(1) ("This section does not apply to ... a residential mortgage transaction as defined in section 1602(w) of this title"); 12 C.F.R. § 226.23(f) (exempting residential mortgage transactions from rescission rights); *Gray v. Wells Fargo Home Mortg.,* No. 11–2945, 2012 U.S. Dist. LEXIS 8571, at *4–5 (D.N.J. Jan. 24, 2012) ("This Court and other courts in this Circuit have regularly applied this TILA exemption to loans made for the purchase of residences."); *Pantalion v. Resmae Mortg. Corp.,* No. 09–2269, 2010 U.S. Dist. LEXIS 47209, *13–14 (E.D.Cal. May 12, 2010) ("[R]escission is not available under TILA because the transaction for which plaintiff seeks rescission was a residential mortgage transaction.").

*Id.*

Plaintiffs summarily state that this "decision denying amendment did not determine that [P]laintiffs are untimely for rescission, but rather erroneously determined the Argent transaction was a purchase money loan not subject to rescission." (Pls.' Opp. to Citigroup at 37). However, the Court has reviewed *Schiano I*, and notes that nowhere in that Opinion did Judge Hammer state that the October 2004 transaction "was a purchase money loan." Moreover, even if Judge Hammer had made such a finding, Plaintiffs have not explained why that finding would have been "erroneous" or why they would be otherwise entitled to rescission under TILA. Accordingly, absent any substantive argument by Plaintiffs as to why this Court should disregard Judge Hammer's determination that Plaintiffs are not entitled to rescission of the October 2004 transaction, the Court will honor that explanation as the law of the case.

However, even assuming that Plaintiffs were entitled to rescission, the Court finds that Plaintiffs' request for rescission is barred by the statute of repose. Plaintiffs TILA and HOEPA claims are likewise time-barred. A plaintiffs' TILA and HOEPA claims must be filed "within one

15

year of the occurrence of the violation." 15 U.S.C. §1640(e). The statutory clock for

TILE/HOEPA claims start ticking "when the transaction occurs." *Taggart v. Chase Bank USA,*

*N.A.*, 353 Fed App'x 731, 732 (3d Cir. 2009); *see also Ramadan v. Chase Manhattan Bank*, 156

F.3d 499, 500-01 (3d Cir. 1998).

Here, Plaintiffs' TILA/HOEPA claims arise out of the October 2004 transaction. (*See* FAC

¶ 130). Accordingly, these claims were time-barred as of October 2005—one year after the

October 2004 transaction. With respect to Plaintiffs' request for rescission of the October 2004

transaction, a plaintiff seeking rescission of a mortgage transaction "must file his action within

three years after the closing." *Taggart,* 353 Fed. App'x at 732 (citing 15 U.S.C. § 1635(f)).

The relief of rescission pursuant to 15 U.S.C. § 1635(f) is a statute of repose rather than

one of limitation. *Williams v. Wells Fargo Home Mortg., Inc.*, 410 Fed. App'x. 495, 499 (3d Cir.

2011). As the Third Circuit has explained, under TILA,

> [c]onsumers have an absolute right to rescind for three business days after closing on a
> loan. To exercise this 'no questions asked' right of rescission, the obligor on the mortgage
> note must simply notify the creditor of his intention to do so, consistent with the applicable
> regulations. No court filing is necessary to effectuate this right.
>
> If the lender fails to make the requisite disclosures before the loan commences, the
> three-day restriction on the right of rescission does not begin to run. A consumer who does
> not receive the requisite disclosures has a right to rescind that lasts until three days after
> the disclosures are received. That right of rescission is not perpetual, however, even if the
> consumer never receives all of the requisite disclosures. The right "expire[s] three years
> after the date of consummation of the transaction or upon the sale of the property,
> whichever occurs first." [15 U.S.C.] § 1635(f).

*Sherzer v. Homestar Mortg. Serv.*, 707 F.3d 255, 256 (3d Cir. 2013) (internal citations to 15 U.S.C.

§ 1635(a), (b) omitted). A statute of repose, unlike a statute of limitations, is not subject to

equitable tolling. *Williams*, 410 Fed. App'x. at 499 ("Because the right [to rescission] ceases to

exist once a statute of repose has run, equitable tolling cannot resurrect the right to rescind a credit

transaction.").

16

The Moving Defendants maintain that because Plaintiffs first sought rescission against Argent in April 2008 (Argent Mov. Br. at 14) and against Citigroup in November 2007 (Citigroup Mov. Br. at 22)—both three years after the October 2004 transaction—that these rescission claims are time-barred.

Plaintiffs argue that their TILA and HOEPA claims and request for rescission are not time-barred. (Pls.' Opp. to Citigroup at 36). In support of this position, Plaintiffs summarily state that their "October 8, 2004 is [sic] subject to equitable tolling" because "equitable tolling applies when there is fraudulent concealment" and "Plaintiffs' actual Lender at the October 8, 2004 closing was not disclosed to [P]laintiffs." (Id.).

Plaintiffs appear to offer alternative arguments as to why they should be permitted to seek rescission of the October 2004 transaction. First, in their response to the Moving Defendants Rule 56 filing, Plaintiffs state that they "filed mortgage action on October 9, 2007, under docket 07-4896 (October 8, 2007 was Columbus Day Holiday). Plaintiffs filed action versus Homeq Loan Servicing, which was servicer to plaintiffs' loan which was transferred in January 2005, and Citigroup, Inc." (Pls. Opp. SMF Argent ¶17).

To the extent Plaintiffs are arguing that they sought rescission of the October 2004 transaction with the filing of their October 2007 complaint under docket number 07-4896, the Court has reviewed that Complaint, and notes that the closest to a request for rescission that Plaintiffs get in those documents is the filing of a breach of contract claim against "all defendants" and requesting relief in the form of compensatory damages, statutory punitive damages, costs and fees and "any other relief which this Honorable Court deems just and reasonable." (07-cv-4896, ECF No.1 at 16-17). Plaintiffs did not seek rescission of the October 2004 transaction until

November 26, 2007 with the filing of their Amended Complaint. (07-cv-4869, ECF No. 3). Thus, the Court finds that Plaintiffs did not, in fact, seek rescission in their October 2007 Complaint.

Second, Plaintiffs argue that their October 2004 loan was never actually consummated because "Lender was never identified at October 8, 2004 closing, and Argent had already sold loan to Ameriquest, and Ameriquest to unidentified entity on October 4, 2004, Exh. 11 (endorsement requires date – or issue of material fact, Sanchez, BAC, supra)." (Pls.' Opp. to Argent at 38). Specifically, Plaintiffs state that "[o]n October 4, 2004, prior to October 8, 2004 closing of refinance, and prior to expiration of TILA . . . Argent sold [P]laintiffs' loan to Ameriquest, and Ameriquest sold to unidentified entity, Exh. 11." (Pls.' Opp. to Citigroup at 9). Exhibit 11 referenced by Plaintiffs is the Adjustable Rate Note, dated October 4, 2004, which states that the Plaintiffs' "Lender is Argent Mortgage Company, LLC" and that the Plaintiffs "understand that the Lender may transfer this Note." (Pls.' Exh. 11). In support of their unknown lender argument, Plaintiffs also cite to the Letter of Transmittal, dated October 8, 2004, discussed above, that indicates that it is transmitting an "Assignment of Mortgage or Deed of Trust assigned [X] in blank," as opposed to having been assigned "as otherwise instructed." (Pls.' Exh. 6).

As far as the Court can tell, Plaintiffs appear to argue that because they did not know who the lender to their October 2004 loan was, they were not apprised of a material issue of fact with respect to the October 2004 contract and thus could not have accepted and consummated that contract. Thus, Plaintiffs appear to argue that the statute of repose could not have begun to run in the absence of a consummated contract.

Plaintiffs have not cited to any statute, nor offered any case law, indicating that a mortgage contract is not valid where the plaintiff is not aware of the lender and where the Adjustable Rate Note specifically contains a provision indicating that "the Lender may transfer this Note. The

18

Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the 'Note Holder.'" (Pls.' Exh. 11). In fact, case law suggests that the identity of the lender is not a material disclosure under TILA. *See Wane v. Loan Corp.*, 552 Fed. App'x 908, 912 (11th Cir. 2014) (finding that "[t]he allegation that the [plaintiffs] were not informed that the real lender was BankUnited FSB did not support a right to rescind" because, *inter alia*, the lender's identity "was not a material disclosure under the TILA") (citing 12 C.F.R. § 226.23 n. 48); *see also Schiano*, 2013 WL 2452681, *21 ("It is unclear, however, what duty any of the new defendants had to disclose the lender who funded any of these loans.").

The Court is not moved by Plaintiffs' citation to a Ninth Circuit case that is not binding on this Court and is otherwise distinguishable from the case at bar. (*See* Pls.' Opp. to Citigroup at 38). In *Jackson v. Grant*, the Ninth Circuit determined that a mortgage transaction had not been consummated where "no one . . . had agreed to extend credit to [plaintiff]" and where "several documents . . . explicitly state[d] that [plaintiff] was not guaranteed a loan by signing the loan documents." 890 F.2d 118, 131 (9th Cir. 1989). Unlike in *Jackson*, Plaintiff executed a document that identified Argent as (at least the initial lender) and gave Argent permission to assign those responsibilities.

Finally, even if Plaintiffs' TILA and HOEPA claims were not time-barred, the Moving Defendants would nevertheless be entitled to summary judgment with respect to these claims. As pleaded in their FAC, Plaintiffs' TILA and HOEPA claims appear to be premised upon their belief that the Moving Defendants wrongfully withheld MBNA settlement funds. (*See* FAC ¶ 130). However, as discussed above, Plaintiffs have not offered any evidence from which a reasonable jury could find that the alleged unaccounted-for funds were withheld by the Moving Defendants. Accordingly, the Court finds that Plaintiffs cannot support their claims that: (1) "*as the result of*

19

*the earned and unearned fees/kickbacks* in the [P]laintiffs' October 2004 subprime mortgage, the fees exceeded eight (8) percent of the loan amount resulting in a HOEPA loan, which was not disclosed to the [P]laintiffs by [D]efendants; or (2) that "[D]efendants violated Truth in Lending Act by failing to acknowledge payment in full of [P]laintiffs' MBNA/BOA debt." (*Id.*) (emphasis added). Finally, to the extent this Court were to construe the statement in Plaintiffs' FAC that "HOEPA prohibits a lender from engaging in a pattern or practice of extending HOEPA loans without regard to the borrowers' ability to repay from sources other than the encumbered home's equity" as an allegation that any Defendant has violated this prohibition, Plaintiffs have not offered any evidence to that effect.

To summarize, the Court will grant summary judgment with respect to Plaintiffs' TILA and HOEPA claims under Count IV of the FAC because these claims are time-barred and otherwise not supported by the record. The Court likewise grants summary judgment with respect to Plaintiffs' request to rescind the October 2004 contract because: (1) Judge Hammer has already determined that Plaintiffs are not entitled to rescission, (2) Plaintiffs have not given this Court any reason to part ways with that finding, and (3) Plaintiffs' rescission claim is barred by the statute of repose in any event.

**D. Count V**

In Count V of their FAC, Plaintiffs attempt to assert a breach of contract claim against the Moving Defendants. To state a claim for breach of contract under New Jersey law, the plaintiff must allege facts demonstrating that: "[1] the parties entered into a valid contract, [2] the defendant failed to perform his obligations under the contract, and [3] the plaintiff sustained damages as a result." *Murphy v. Implicito*, 392 N.J. Super. 245, 265 (App. Div. 2007).

According to Plaintiffs, they "had a mortgage contract with defendants Argent Mortgage Company, now defendant Citigroup, Inc. as successor in interest to Argent Mortgage Corporation, and defendant Barclays Bank PLV, d/b/a Homeq Servicing Corporation, as service to the contract, which constituted a contract between [P]laintiff[s] and those defendants." (FAC ¶ 134).  The entirety of the substantive allegations against all Defendants as to Plaintiffs' breach of contract claim are as follows: "All defendants, including defendant Barclays/Homeq breached servicing contract with plaintiffs by failing to provide valid mortgage note/contract transfer/assignment agreements and by fraudulently obtaining and fraudulently converting [P]laintiffs' October 2004 subprime mortgage into a fraudulent debt." (FAC ¶ 136).

The Moving Defendants maintain that Plaintiffs' breach of contract claims fail because Plaintiffs have not identified any "contract terms which require [Citigroup or Argent] to act or refrain from acting in a manner contrary to the allegations in paragraph 136 of the Complaint."[5] (Citigroup Mov. Br. at 25-26; *see also* Argent Mov. Br. at 20).  That is, Plaintiffs have not produced any contract "which: (1) required [the Moving Defendants] to provide a valid mortgage note, contract transfer or assignment agreements or (2) prohibited [the Moving Defendants] from converting Plaintffs' Mortgage into a debt." (Argent Mov. Br. at 20; Citigroup Mov. Br. at 26).

For their part, Plaintiffs respond that they "did not intend to 'not' enter into a valid mortgage refinance contract." (Pls.' Opp. to Argent at 38).[6]  Additionally, Plaintiffs attempt to cite to specific provisions of the mortgage contract that the Moving Defendants breached:

---

[5] Additionally, Citigroup argues that Plaintiffs cannot prove the first element of a breach of contract claim where they have not produced any contract executed by Citigroup. (Citigroup Mov. Br. at 25). Because the Court finds that Plaintiffs cannot prove a breach of contract as to Argent, and because Citigroup's only liability would be derivative, the Court need not address this argument.

[6] Plaintiffs argue that the Moving Defendants breached alleged contracts by failing to forward and by withholding MBNA's payments. (Pls.' Opp. to Argent at 39). Because the Court has already determined that Plaintiff has no evidence to support the unlawful withholding of fees, this allegation cannot be the basis of Plaintiffs' breach of contract claim.

21

The mortgage contract is clear that all applicable law is to be followed including federal and state statutes, Argent Exh. 2, a p.2, notice of acceleration required, Argent Exh. 2 at p. 13; and that "Lender shall cancel this security instrument," upon payment of all sums due, Argent Exh. 2 a p.15. The mortgage note requires Lender to accept payments from 'guarantor, surety, or endorser," Argent Exh. 3, which prevents declaration of breach or default when event that is cited as the basis for the breach did not happen.

According to Plaintiffs, in violation of the above contractual provisions, the Moving Defendants "fail[ed] to disclose the actual nature and terms of the October 8, 2004 transaction and sale of loan prior to closing, and failure to forward [P]laintiffs' 2004 payments to Ameriquest to proper party, and placing [P]laintiffs' loan in further default status – contrary to terms of mortgage contract." (Pls.' Opp. to Argent at 40).

Once again, Plaintiffs have failed to connect the dots between the evidence they offer in support of the above allegations and their breach of contract claims. Specifically, Plaintiffs have not offered any support that either Moving Defendant falsely placed them in breach of contract, failed to accept valid payments, or failed to cancel the mortgage upon full payment of same.

The Court is cognizant of the title issues with respect to the October 2004 transaction and the complexity of same. However, without substantiating evidence of specific misconduct by any particular defendant, Plaintiffs cannot prove their claims based upon any particular defendant's mere association with the October 2004 transaction that, somewhere along the line, seems to have gone amiss. Plaintiffs have not shown that there are material issues of disputed fact as to any of Plaintiffs' allegations against the Moving Defendants which should be reserved for a jury's determination.

## IV.    CONCLUSION

For the reasons discussed herein, the Court will grant the Moving Defendants' motion for summary judgment in the entirety, and will dismiss Plaintiffs' claims against these Defendants with prejudice. An appropriate Order accompanies this Opinion.

IT IS SO ORDERED.

DATED:   August __*10*__ , 2016

JOSE L. LINARES, U.S.D.J.